

FILED
TIME: 11:40 a.m.

AUG 1 2 2005

JAMES BONINI, Clerk
COLUMBUS, OHIO

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SIERRA CLUB and
MARILYN WALL,
      Plaintiffs,

v.

DAYTON POWER &
LIGHT, INC., et al.,
      Defendants.

Case No. 2:04-CV-905
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court for consideration of the Defendants' Motion to Dismiss Plaintiffs' complaint. (Doc. #13). For the reasons that follow, the motion is granted in part and denied in part.

### I.

Plaintiffs, the Sierra Club and Marilyn Wall ["Plaintiffs"], bring this action pursuant to 42 U.S.C. § 7604, the citizen suit provision of the Clean Air Act ["CAA"], against Dayton Power & Light, Inc., Cincinnati Gas and Electric Co., and Columbus Southern Power Co. ["Defendants"]. Plaintiffs allege violations of the CAA in connection with Defendants' operation of the J.M. Stuart Generating Station ["Stuart Station"], a 2600 megawatt coal-fired power plant located in Adams County, Ohio. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

Plaintiff Sierra Club is a national non-profit conservation organization that has approximately 700,000 members. (*Complaint* at ¶ 8). The Sierra Club is "dedicated to protecting . . . national natural resources, including clean air and water." (*Id.*). With

approximately 20,000 members in the State of Ohio and approximately 4,900 members in the State of Kentucky, the Sierra Club alleges that it has members who "live, recreate, work, own real estate, grow crops, and study in and near areas affected by the air pollution from Stuart Station, and will continue to do so on a regular basis." (*Id.* at ¶¶ 8, 10). Plaintiff Marilyn Wall lives in Cincinnati, Ohio and also "experiences the effects of Stuart Station's pollutant emissions." (*Id.* at ¶ 11). According to Plaintiffs, the pollutants emitted from the Stuart Station degrade the air quality and cause injury and damage to "human health, wildlife, vegetation, visibility, and real estate in areas used by [Sierra Club] members . . . ." (*Id.* at ¶ 10).

Plaintiffs allege that the Stuart Station is the "largest source of particulate matter ("PM") pollution in the State of Ohio, according to the Ohio EPA." (*Id.* at ¶ 36). In addition, Plaintiffs allege that "Stuart Station is also a very large source of sulfur dioxide pollution." (*Id.* at ¶ 39). In their Complaint, Plaintiffs allege that the Defendants have violated and continue to violate the New Source Review provisions of the CAA because the Stuart Station underwent numerous "modifications" since June 1975 which resulted in a significant net increase of pollutant[1] emissions. (*Id.* at ¶ 41). According to Plaintiffs, Defendants failed to obtain necessary permits and failed to install the best available control technology ["BACT"] before making the modifications. (*Id.* at ¶ 2). Plaintiffs further allege that the modifications made violate the Ohio State Implementation Plan ["SIP"], Stuart Station's Title V operating permit and a consent order issued by the EPA. (*Id.*). Plaintiffs seek injunctive relief, civil penalties, attorneys' fees and costs as relief for Defendants' alleged violations of the CAA.

Defendants move to dismiss Plaintiffs' Complaint for various reasons. The Court now

---

[1]Specifically, particulate matter, sulfur dioxide and nitrogen oxide. (*Complaint* at ¶ 41).

2

proceeds to consider the merits of this motion.

## II.

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Schuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir. 1993). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

## III.

### A. Statute of Limitations.

Defendants move to dismiss Plaintiffs' claims for civil penalties under the Prevention of Significant Deterioration ["PSD"] provision of the CAA (Counts 1 and 2) on the basis that they are barred by the five year statute of limitations at 28 U.S.C. § 2462. According to the Defendants, the Plaintiffs' claims as to projects undertaken at the Stuart Station first accrued, for

purposes of the statute, as of the date the projects commenced without Defendants obtaining the requisite preconstruction permits. Since the projects at issue in this case took place at the Stuart Station at various times in 1975, 1980, 1989, 1991, 1993, and 1997 (*Complaint* at ¶¶ 41-50), Defendants argue that the Plaintiffs' claims for civil penalties are barred by the five year limitations period.

Defendants further argue that the statute of limitations precludes application of the continuing violations doctrine. The doctrine, articulated by the Sixth Circuit in *Tolbert v. Ohio Dept. of Transportation*, 172 F.3d 934 (6th Cir. 1999), applies where a violation, which occurred outside the relevant limitations period, is so closely related to other violations that are not time-barred, so as to be viewed as part of a continuing practice so that recovery may be had for all violations. To satisfy the doctrine: (1) the defendant's wrongful conduct must continue after the precipitating event that began the pattern; (2) the injury must continue to accrue after the event; and (3) injury to the plaintiff must have been avoidable if the defendant had ceased its wrongful conduct. *Tolbert*, 172 F.3d at 939.

This Court has had occasion to address the arguments made by Defendants herein with respect to both the statute of limitations and continuing violation issues. *See United States of America, et al. v. Ohio Edison Company*, 2:99-CV-1181 ["*Ohio Edison*"], and *United States of America, et al. v. American Electric Power Service Corp., et al.*, 2:99-CV-1182 and 1250 ["*AEP*"]. The Court finds no reason to depart from its prior rulings in considering the current claims against Defendants in this case.

As to the statute of limitations issue, the relevant provision states:

Except as otherwise provided by Act of Congress, an action, suit or proceeding for

4

>the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462.

In *AEP*, this Court held that the statute does not preclude Plaintiffs from bringing enforcement claims but, "28 U.S.C. § 2462 limits the time to five years in which civil penalties may be sought for days in which the Defendants allegedly violated the CAA." *United States, et al. v. American Electric Power Service Corp.*, 137 F.Supp.2d 1060, 1067 (S.D. Ohio 2001). Thus, while there is a limit on any amount of civil penalties Plaintiffs may recover, to the extent Defendants seek dismissal of Plaintiffs' claims as untimely under § 2462, the motion is without merit.

In addition, the Court finds that Plaintiffs' claims may proceed without resort to the continuing violations doctrine. As this Court stated in *AEP*, "the CAA [itself] clearly authorizes citizen suits for what is considered a continuing or wholly past violation" of the Act. *Id.* "[W]hether or not the Citizens [intervening Plaintiffs in *AEP*] satisfy the elements of the continuing violation doctrine is not germane to the issue . . . ." 137 F.Supp.2d at 1067. As this Court later explained in *Ohio Edison*, "the PSD provisions [of the CAA] contemplate not only certain preconstruction obligations but also subsequent operation [obligations] after modification. Thus, this Court concludes that Plaintiffs' claims for civil penalties under the PSD provisions . . . are not barred by the statute of limitations." *United States of America, et al. v. Ohio Edison Company,* No. 2:99-CV-1181, 2003 WL 23415140 at *6 (S.D. Ohio Jan. 17, 2003).

Defendants in this case, like Defendants in *AEP*, also argue that, irrespective of the statute

5

of limitations and continuing violation issues, there can be no liability under the PSD provisions for "operating," as opposed to "constructing," a facility without the relevant permits[2]. The Court has considered this issue in the context of the *AEP* case and applies the same holding here.

> [O]peration of a facility in violation of any condition required by a permit is a violation of the [CAA]. . . . The [PSD] requirements clearly contemplate limitations on emissions that occur after a source is constructed or modified. Indeed, "construction" includes "modification" of any source or facility. 42 U.S.C. § 7479(2)(C). In turn, a "modification" is defined to include "any physical change in, *or change in the method of operation of,* a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted." 42 U.S.C. § 7411(a)(4) . . . . Furthermore, pursuant to 40 C.F.R. § 52.21(w)(1), a permit remains in effect unless or until it expires or is rescinded. Based upon the foregoing, the Court finds it illogical to conclude that a defendant may only be held liable for constructing a facility, rather than operating such facility, without complying with the permit requirements.

*United States of America, et al. v. American Electric Power Service Corp.*, 137 F.Supp.2d 1060, 1066 (S.D. Ohio 2001) (emphasis in original).

For all of these reasons, the Defendants' motion to dismiss Plaintiffs' claims for civil penalties on the basis that they are barred by § 2462 is without merit. Nevertheless, the Court concludes that § 2462 limits the time for Plaintiffs' recovery of civil penalties, if any, to a five year time period.

## B. Concurrent Remedy Doctrine.

Defendants move to dismiss Plaintiffs' PSD claims for injunctive relief on the basis that they are barred by the concurrent remedy doctrine. Under this rule, "equity will withhold its

---

[2] 42 U.S.C. § 7604(a)(3) provides a cause of action against "any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I . . . or part D of subchapter I . . . ." 42 U.S.C. § 7604(a)(3).

relief . . . where the applicable statute of limitations would bar the concurrent legal remedy." *Cope v. Anderson*, 331 U.S. 461, 464 (1947).

This Court held in *AEP* that the concurrent remedy doctrine does not apply to actions brought by the Government, but the same is not true with respect to citizen actions such as the one at bar. 137 F.Supp.2d at 1068. Nevertheless, this Court concluded that the doctrine does not bar citizen suits for injunctive relief because "while citizen enforcers could seek civil penalties, 'those penalties are payable to the United States, not to the plaintiff[s], so compensation cannot be their primary function.'" *Id.*, quoting *A-C Reorganization Trust v. E.I. DuPont de Nemours & Co.*, 968 F.Supp. 423, 429 (E.D. Wis. 1997). Since the primary purpose of civil penalties is deterrence, not reward to Plaintiffs, this Court concludes as it did in *AEP*, that the concurrent remedy doctrine poses no obstacle to Plaintiffs' claims for injunctive relief. The Defendants' motion to dismiss in this regard is without merit.

## C. Laches.

Defendants in this case argue that Plaintiffs' claims under the CAA are barred by the doctrine of laches. Defendants note that the claims are based on "actions that occurred between 7 and 33 years ago." (*Motion to Dismiss* at 18). Defendants argue that they are substantially prejudiced by this delay. Defendants further contend that the instant action will hinder Defendants' initiatives in installing state-of-the-art pollution controls at the Stuart Station as anticipated "within the next 4-5 years." (*Id.*).

In *AEP*, this Court noted that the doctrine of laches does not apply to the United States acting in its sovereign capacity to enforce a public right or to assert a public interest. *United*

7

States of America, et al. v. American Electric Power Service Corp., 218 F.Supp.2d 931, 937 (S.D. Ohio 2002). While the same is not true for citizen actions, this Court held in *AEP* that the doctrine could operate to limit the extent of injunctive relief available should Plaintiffs prevail. "The nature and/or extent of appropriate injunctive relief might well change because of the lapse of time." *United States of America, et al. v. American Electric Power Service Corp.*, 136 F.Supp.2d 808, 814 (S.D. Ohio 2001).

The Court reaches the same conclusion in this case. The doctrine of laches does not serve as an absolute bar to Plaintiffs' claims under the CAA. However, should Plaintiffs prevail on their claims, the doctrine may impact the nature and/or extent of injunctive relief available. The doctrine does not impact Plaintiffs' claims for civil penalties.

### IV.

The Defendants' Motion to Dismiss **(Doc. #13)** is **GRANTED in part** and **DENIED in part**, consistent with the foregoing.


**IT IS SO ORDERED.**


8-12-2005
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE