UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SIERRA CLUB, *et al.*,

    Plaintiffs,

v.

Case No. 2:04-CV-00905
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Mark R. Abel

DAYTON POWER & LIGHT INC., *et al.*,

    Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiffs' Motion for Attorneys' Fees and Costs. (ECF No. 131.) For the reasons that follow, Plaintiffs' Motion is **GRANTED**. Plaintiffs are **AWARDED** costs of litigation in the amount of **$20,299.67**.

I.

Plaintiffs, the Sierra Club and Marilyn Wall, brought this action against Defendants Dayton Power and Light Company, Columbus Southern Power Company, and Duke Energy Ohio, Inc. pursuant to the Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq.* Plaintiffs specifically brought private enforcement causes of action pursuant to 42 U.S.C. § 7604(a), maintaining that Defendants, through ownership and operation of the J.M. Stuart Generating Station ("Stuart Station") (a coal-fired power plant), violated several CAA programs. Plaintiffs sought declaratory and injunctive relief, civil penalties, and their costs of litigation.

On October 23, 2008, the parties consented to, and the Court approved, a consent decree resolving Plaintiffs' action. Without any admission of violation, Defendants agreed to meet various emission level standards at the Stuart Station, including limitations on oxides of nitrogen

("NOx") emissions. (*See* Consent Decree ¶¶ 44–52, ECF No. 107). The requirements of the Consent Decree included that Defendants "comply with a 30-Day Rolling Average NOx Emission Rate at Stuart Station of not greater than 0.17 lb/mmBTU" and ultimately a rate of "not greater than 0.10 lb/mmBTU" by December 31, 2014. (*Id.* at ¶¶ 44, 47.) The Consent Decree, at paragraph 40, provided the following method for calculating the "30-Day Rolling Average NOx Emission Rate":

> [F]irst, sum the total pounds of NOx emitted from each Stuart Station Unit during a Boiler Operating Day and the previous twenty-nine (29) Boiler Operating Days for each Stuart Station Unit to determine total Stuart Station 30-day pounds of Nox; second, sum the Hourly Heat Input to each Stuart Station Unit in mmBTU during the Boiler Operating Day and the previous twenty-nine (29) Boiler Operating Days for each Stuart Station Unit to determine total Stuart Station 30-day heat input; and third, divide the total Stuart Station 30-day pounds of NOx by the total Stuart Station 30-day heat input.
>
> * * *
>
> Owners may exclude emission and Hourly Heat Input that occur during periods of Malfunction from the calculation of the 30-Day Rolling Average Emission Rate.

(*Id.* at ¶ 40.) The Consent Decree also stated, "[e]xcept as provided in Paragraph 40 of this Consent Decree, in determining compliance with the 30-Day Rolling Average NOx Emission Rate requirements of this Section [], Owners shall follow the procedures set forth in 40 C.F.R. § 60.48Da." (*Id.* at ¶ 52.)

In October 2009, Plaintiffs filed their Motion to Enforce the Consent Decree. Plaintiffs maintained that Defendants were incorrectly reporting the 30-Day Rolling Average NOx Emission Rate because they were excluding startup and shutdown emissions from the calculation. According to Plaintiffs, the Consent Decree, and specifically paragraph 40, required inclusion of total emission and only permitted exclusion of emissions during periods of malfunction. Although Plaintiffs conceded that it was unlikely Defendants were in violation of

2

the emissions limit, they stressed that clarification of the issue was important to assure future compliance when limits will become more restrictive. Defendants opposed Plaintiffs Motion to Enforce. Defendants contended, in part, that exclusion of startup and shutdown emissions was proper because the Consent Decree incorporated 40 C.F.R. § 60.48Da, which permitted such exclusions. Defendants further maintained that exclusion of such emissions was not inconsistent with the requirements of paragraph 40 of the Consent Decree.

Prior to resolution of the Motion to Enforce, the parties negotiated an Amended to the Consent Decree, resolving the issue in dispute. The Amendment to the Consent Decree added definitions for the terms "Shutdown" and "Startup." (Am. Consent Decree ¶ 3, ECF No. 128.) Additionally, the Amendment added the following section at the end of paragraph 40's definition of "30 Day Rolling Average NOx Emission Rate":

> Owners shall include emissions and Hourly Heat Input that occur during periods of Shutdown in the calculation of the 30-Day Rolling Average NOx Emission Rate. Owners shall include in the calculation of the 30-Day rolling Average NOx Emission Rate the emissions and Hourly Heat Input that occur during the first forty-five (45) hours of Startup in a calendar month; however NOx emissions and Hourly Heat Input during such Startup Hours that occur during a non-Boiler Operating Day, during a Malfunction or during a period of missing data shall not be included in a calculation of the 30-Day Rolling Average NOx Emission Rate. Emissions and Hourly Heat Input during Startup hours that are in excess of forty five (45) hours in a calendar month shall be excluded in the calculation of the 30-Day Rolling Average NOx Emission Rate.

(*Id.* at ¶ 3c.)

Following entry of the Amendment to Consent Decree, Plaintiffs filed the instant Motion for Attorneys' Fees and Costs. Pursuant to 42 U.S.C. § 7604(d), Plaintiffs seek $30,449.51 in costs—including attorney and expert witness fees—for their efforts regarding enforcement of the Consent Decree. Defendants oppose Plaintiffs' Motion for Attorneys' Fees and Costs.

3

## II.

Under the "American Rule" parties must generally pay their own attorney's fees regardless of the ultimate outcome of a case. *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149, 2156–57 (2010). Various federal statutes, however, alter the default approach. *Id.* at 2157. "'[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'" *Graceland Fruit, Inc. v. KIC Chems., Inc.*, 320 F. App'x 323, 328 (6th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

The CAA provides, in relevant part, that "[t]he court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, *whenever the court determines such award is appropriate.*" 42 U.S.C. § 7604(d) (emphasis added). To award costs and attorney fees pursuant to § 7604(d) the Court must first determine that the party seeking costs has achieved "some degree of success on the merits . . . ."[1] *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983). Attorney-fee case law suggests that success may come in different forms including "an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." *DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 670 (6th Cir. 2006) (internal quotations omitted) (discussing "prevailing party" status pursuant to the civil rights attorney-fee statute, 42 U.S.C. § 1988).

Outside of the requisite degree of success, case law provides little guidance on when an award of costs and attorney fees is appropriate. *See, e.g., Ruckelshaus*, 463 U.S. at 683 (noting

---

[1] Although the Supreme Court reached this conclusion within the context of 42 U.S.C. § 7607(f), it recognized that § 7604(d) applies a similar, if not the same, standard. *Ruckelshaus*, 463 U.S. at 691.

4

that "[i]t is difficult to draw any meaningful guidance from [Congress'] use of the word 'appropriate'"); *Northeast Iowa Citizens For Clean Water v. Agriprocessors, Inc.*, 489 F. Supp. 2d 881, 894 (N.D. Iowa 2007) ("[T]here is little explicit judicial exposition of the standards that the court must apply in exercising such discretion."). Within the context of civil rights attorney fees the United States Court of Appeals has held that when a party meets the success requirements "in the absence of special circumstances a district court not merely 'may' but must award fees to the prevailing plaintiff." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001) (internal quotations omitted). In the context of the CAA, "some courts have held that an 'appropriate' award of attorney's fees also requires the petitioner to have 'contributed substantially to the goals of the Clean Air Act.'" *Pound v. Airosol Co., Inc.*, 368 F. Supp. 2d 1161, 1165 (D. Kan. 2005) (quoting *W. States Petroleum Ass'n v. EPA*, 87 F.3d 280, 286 (9th Cir. 1996)).

Finally, the Supreme Court has held that a party may recover attorney fees under the CAA for post-judgment measures taken to enforce a consent decree. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 558–60 (1986); *see also Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 538, 544 (10th Cir. 2000) ("Courts interpreting the Civil Rights Attorney's Fees Awards Act and the citizen suit attorney's fee provision of the Clean Air Act have consistently allowed attorney's fees for post-judgment enforcement and collection activities."). Any such activity "must be useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Delaware Valley*, 478 U.S. at 561. Accordingly, when a party has secured at least some degree of success on the merits through a consent decree "attorney fees incurred for reasonable efforts to enforce that change-that is, protect the fruits of

5

the Decree-are compensable." *Mynard v. Office of Pers. Mgmt.*, 382 F. App'x 582, 587 (Fed. Cir. 2009) (internal quotations omitted); *see also Assoc. for Retarded Citizens of North Dakota v. Schafer*, 83 F.3d 1008, 1011 (8th Cir. 1996) ("[C]ompensable post-judgment work must in any event be reasonable and necessary, measured by the *Hensley v. Eckerhart* standard that requires balancing the amount of effort against plaintiffs' overall success.").

## III.

### A. Appropriateness of Award

Before deciding whether costs of litigation are appropriate in this matter, the Court must decide whether 42 U.S.C. § 7604(d) applies. Defendants emphasize that § 7604(d) permits costs of litigation only for actions under § 7604(a). Defendants further maintain that because this matter involves interpretation of a consent decree, and not an action under § 7604(a), the attorney fee provision of the CAA does not apply. The Court disagrees with such a narrow interpretation of this action. Plaintiffs brought this action pursuant to § 7604(a) and ultimately obtained relief in the form of a consent decree. As detailed above, pursuant to *Delaware Valley,* the CAA allows compensation for post-decree enforcement action. Accordingly, Plaintiffs actions in bringing their Motion to Enforce, resulting in an Amendment to the Consent Decree, fall within the category of post-judgment conduct considered in *Delaware Valley.*

The Court also finds that an award of costs of litigation, including attorney and expert witness fees, for Plaintiffs post-judgment activity is appropriate in this case. First, it is clear that Plaintiffs have achieved at least some degree of success on the merits through both the initial Consent Decree and its post-decree action. Plaintiffs brought this action to decrease the emissions of, and increase the regulation of, Defendants' power plant. Pursuant to the Consent

6

Decree, Defendants agreed to meet various emission rate levels, including limitations on NOx emissions. More specifically, Plaintiffs—pursuant to their interpretation of the Consent Decree—brought their Motion to Enforce to require Defendants to include startup and shutdown emissions within the 30-Day Rolling Average NOx Emission Rate. The Amendment to the Consent Decree includes both startup and shutdown emission, albeit with some exceptions, in the 30-Day Rolling Average NOx Emission Rate.

Second, the Court finds that Plaintiffs' enforcement actions were both reasonable and useful to ensuring compliance with the Consent Decree. The Court acknowledges that it did not ultimately reach the merits of Plaintiffs' Motion to Enforce. Accordingly, it is difficult to ascertain whether Plaintiffs' actions were ultimately necessary to interpretation of the Consent Decree. Nevertheless, in light of the inherent difficultly in drafting complex emission standards, disagreements over the interpretation of such standards are not unexpected. Accordingly, Plaintiffs' actions, to clarify the meaning of the Consent Decree, were ultimately important to ensure proper compliance. Although Plaintiffs' actions may not have reduced emissions in the short term, because the Consent Decree requirements become more stringent as time goes on, it was important for the parties to resolve the proper measurement and calculation of emission rates. Accordingly, the Court finds that Plaintiffs' enforcement efforts were reasonable in order to secure relief under the Consent Decree.

Finally, Defendants imply that attorney fees are inappropriate because Plaintiffs did not raise the issue during negotiations regarding amendments to the Consent Decree. Defendants also contend that an award of attorney fees under the circumstances will create obstacles for future dispute resolution. The Court finds such contentions unpersuasive. Defendants were free

7

to require waiver of attorney fees and other costs as a condition to any agreement with Plaintiff. They chose not to take such action. Accordingly, the Court finds nothing improper in granting costs of litigation for Plaintiffs post-decree enforcement actions.

## B. Amount of Award

After determining that an award of attorney fees and costs is appropriate, the Court must still evaluate the amount of the award. The starting point for this determination is the lodestar method. *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 551 (6th Cir. 2008). The lodestar amount "is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.* " Where the party seeking the attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Id.* at 552.

Nevertheless, "'[t]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained.'" *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Accordingly, "[i]f a plaintiff has achieved only partial success compared to the scope of the litigation as a whole, the fee request may be reduced below the lodestar figure." *Northeast Ohio Coalition for Homeless v. Brunner*, 652 F. Supp. 2d 871, 885 (S.D. Ohio 2009). "There is 'no precise rule or formula' for making this determination." *Id.* (quoting *Hensley*, 461 U.S. at 436). Rather, the Court "may try to identify specific hours to be eliminated or may reduce the overall award to account for the limited degree of success." *Id.*

Here, Plaintiffs seek $30,449.51 for a combination of attorney fees, expert witness fees, and costs. (Pls.' Mot. Attorneys' Fees 10, ECF No. 131.) Although Defendants oppose the

8

propriety of awarding such costs in general, they do not specifically object to the reasonableness of Plaintiffs' hours and rates. Having reviewed Plaintiffs' submissions, and noting that Defendants do not object to the hours and rates at issue, the Court concludes that the sum Plaintiffs seek accurately reflects the lodestar amount.

Nevertheless, under the circumstances of this case, the Court finds a reduction from the lodestar amount appropriate. It is somewhat difficult to evaluate Plaintiffs' degree of success. As discussed above, Plaintiffs clearly achieved some degree of success on their Motion to Enforce, which resulted in an Amendment to the Consent Decree requiring the inclusion of startup and shutdown emissions. Nevertheless, the Amendment, in addition to offering precise definitions of startup and shutdown, allowed for some exclusions, including exclusions of emissions from startup hours "that are in excess of forty-five (45) hours in a calendar month . . . ." (Am. Consent Decree ¶ 3c, ECF No. 128.) Accordingly, rather than viewing the Amendment to the Consent Decree as a full success for Plaintiffs, the Court finds that it is best viewed as a compromise between the parties. In light of these circumstances, the Court finds that a one-third reduction of the requested amount reflects "Plaintiffs' meaningful, but less than total, success." *Brunner*, 652 F. Supp. 2d at 886. This results in a total fee and cost award of $20,299.67.

## IV.

For the foregoing reasons, Plaintiffs' Motion for Attorneys' Fees and Costs is **GRANTED**. (ECF No. 131.) Plaintiffs are **AWARDED $20,299.67** for the costs of litigation pursuant to 42 U.S.C. § 7604(d).

In light of the July 13, 2010 Amendments to the Consent Decree, the Clerk is also

9

**DIRECTED** to remove Plaintiffs' Motion to Enforce the Consent Decree (ECF No. 110) from the Court's pending motion list.

**IT IS SO ORDERED.**

1-2-2013
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**